Gabrielli, J.
(dissenting). I cannot agree that due process either as urged by the defendant or as expostulated by the majority mandates a reversal of defendant’s conviction and a dismissal of the charges against him. Accordingly, I vote to affirm the order appealed from and sustain the conviction.
While it may well be that under certain egregious circumstances due process might mandate dismissal in an entrapment situation although the defendant is in fact predisposed to commit the crime of which he stands accused (but cf. United States v Russell, 411 US 423), this is not that case.* My disagreement with the majority today lies more in the court’s unwarranted assessment of the facts than in its enunciation of basic principles. The defendant has been convicted, and that conviction has been affirmed by the Appellate Division. The testimony at trial, both as to defendant’s prior involvement in the drug subculture, and as to the details of the sale with respect to which he was convicted, was conflicting to say the least. The defendant, according to his own testimony which has been implicitly, and improperly, credited by the majority of this court, was a veritable innocent: an occasional user of marihuana, who agreed to sell cocaine in this case only because he wanted to help his friend, Breniman (whom he had met casually only three times before); a man *526 who did not even know that the woman he was living with was a regular drug user.
Other witnesses, however, describe a completely different man. Breniman, the police informant, testified that he had on three prior occasions purchased varying amounts of marihuana, cocaine, and phenocyclidine from defendant. Denise Marcon, who shared an apartment with defendant, testified that defendant had been involved in several cocaine sales in the two or three months immediately preceding his arrest. She declared that on at least five occasions cocaine had been delivered to their apartment; that defendant took that cocaine to his laboratory, where he weighed it and broke it down into grams for easier sale; that he subsequently delivered it to several different people. As a perusal of the trial transcript indicates, someone at defendant’s trial took certain liberties with the truth. As we have stated on many prior occasions, the trial court was in the best position to assess the testimony, and that court believed the prosecution witnesses; indeed the experienced Trial Judge concluded that some of defendant’s testimony was incredible. These conclusions were not disturbed by the Appellate Division, and I cannot agree that it is proper for this court to supplant the conclusions of the original trier of fact with its own speculations absent clear error as a matter of law (People v Erwin, 42 NY2d 1064, 1066; People v Richardson, 41 NY2d 886, 887; see People v Gruttola, 43 NY2d 116, 122-123).
The majority has wisely chosen not to decide this case on the statutory entrapment defense issue, since a reversal on that ground would require that the court explicitly disturb the factual finding that defendant was predisposed to commit the crime of which he stands convicted. Unfortunately, it has fallen into the same difficulty in its due process analysis, for although the court admits that the defendant was in fact predisposed to commit the crime, it nonetheless then finds itself in the troublesome position of having to show that defendant’s character is such that he would not have committed this crime had he not been lured into it by Breniman. The distinction is tenuous at best. As I have noted, it is not for this court to set aside the factual determination of credibility made by the lower courts. Indeed, the majority concedes that defendant was previously involved in drug sales, but dismisses that impertinent fact by characterizing those sales as at most "small and rather casual sales”. Whatever the wisdom of our *527 drug laws, it is for the courts to apply them, not demean them. Although the amount of drugs involved in a sale may lessen the degree of liability which attaches, the sale itself remains a criminal act, be it casual or the result of ten years’ planning. In the present case, at any rate, the testimony of Marcon tends to belie the lack of professionalism implied by the majority. I find it difficult to reconcile this evidence with the portrait of entrapped innocence drawn by the court.
Turning then to the police misbehavior which the majority posits as proof that defendant has been deprived of his basic right to fair treatment at the hands of the government, I agree, of course, that the beating of Breniman was inexcusable, as were the devious means used to convince him to work for the police. These actions, however, had no significant connection with defendant, and in no way violated any of defendant’s constitutional rights (cf. People v Cefaro, 21 NY2d 252; People v Hansen, 38 NY2d 17, 22). While police misbehavior is not to be condoned, neither should the punishment for such activity be lightly visited upon society as a whole (see Matter of Nigrone v Murtagh, 46 AD2d 343, 349, affd 36 NY2d 421). Had defendant been a direct victim of police malfeasance, the situation would be quite different. As it is, however, the beating and the trickery were directed solely toward Breniman. To free this defendant, a confirmed drug dealer, simply because the police had mistreated the man who was later to inform on him, makes as little sense as would invalidating all arrests made by a policeman who has mistreated one suspect.
Apart from the mistreatment of Breniman, there has been no other police misbehavior shown in this case. The majority would castigate the police for the "deceitful luring of a Pennsylvania resident into New York solely to make a sale of cocaine”. I do not agree that the actions which are so characterized constitute misconduct under the facts of this case. Proper analysis is furthered by separate consideration of the two discrete aspects of this alleged police misbehavior; the "luring” into New York, and the "entrapment” into the sale in the first place. Assuming that there was no real element of entrapment in this case, as I will discuss below, then surely there is no wrong in "luring” into the confines of New York State a man who would breach our laws with impunity from the far side of the border. Are not the people of this State entitled to some protection from criminal conduct outside the *528 State which is intended to have a harmful effect inside the State? (See, generally, CPL 20.20, subd 2.) Defendant knew that Breniman intended to resell the cocaine in New York, and he had absolutely no compunction about that. His avowed reason for not wishing to enter New York had nothing to do with any desire not to commit a crime, for he had already agreed to do that by agreeing to sell the cocaine to Breniman. Rather, he did not wish to complete the sale in New York because he was afraid of our strict drug laws. In a situation such as this, involving someone who is selling contraband with the knowledge that it will be resold in New York, I see no problem in "luring” that person into our State for the purpose of obtaining criminal jurisdiction over him.
With respect to the nature of the incidents and communications which led to the sale itself, my differences with the majority are in large part based on our interpretations of the record. I find myself compelled to accept that version of the facts which has been accepted by the trial court and left undisturbed by the Appellate Division. So should the majority. As was discussed above, the testimony of Breniman and Marcon, the two other participants in the sale, indicates that the defendant was deeply involved in the drug subculture, and was in fact a seller of cocaine on a fairly regular basis. He had sold cocaine, as well as other illicit drugs, to Breniman on several prior occasions, and obviously had no compunctions about entering into subsequent transactions with Breniman. Although he did not wish to become involved in heroin, he clearly was already involved in the sale of cocaine.
The majority emphasizes that it took some time and several phone calls to set up the deal, and suggests that this is indicative of a disinclination upon the part of defendant to enter into the sale. I would note that the delay was due to the fact that these events transpired over the Christmas-New Year recess, during which time the campus was empty and defendant’s normal source of cocaine doubtless was temporarily curtailed. Thus, he was forced to delay until he could locate a new supply, which he eventually did, purchasing the drugs from a friend of a friend of Marcon.
In light of defendant’s prior sales, both to Breniman and to others, it is clear that this was not the type of manufactured crime which would never have taken place had it not been for the police, and with respect to which society might not wish to impose criminal liability. This is simply not a case in which *529 an innocent man is seduced into criminal activity by police agents solely in order to obtain another conviction. Any reluctance upon defendant’s part came not from a disinclination to sell drugs, but from a temporary disruption of his supply lines and from a disinclination to travel into this State to complete the sale. It is simply not the type of reluctance relevant to either the statutory defense of entrapment or a due process based quasi-entrapment doctrine.
In conclusion, I would note that the police conduct in this case is much less offensive than that in Hampton v United States (425 US 484). There, the Supreme Court held that due process was not violated, and a prima facie entrapment defense was not available to a defendant who was predisposed to commit the crime, in a situation in which defendant alleged that not only had a police agent talked him into becoming involved in a heroin sale, but that it had in fact been the police agent who supplied the heroin.
Accordingly, I am compelled to vote to affirm the order appealed from.
Chief Judge Breitel and Judges Jones, Wachtler and Fuchsberg concur with Judge Cooke; Judge Gabrielli dissents and votes to affirm in a separate opinion in which Judge Jasen concurs.
Order reversed, etc.

 There was no entrapment here, and the majority acknowledges that the principles of that defense are not here involved (pp 518, 519). Any discussion of entrapment as a defense by the majority as it applies to this case is inappropriate. I must address the subject only because the majority expounds upon it and then concludes that the trial court held as a matter of law and fact that entrapment was not here present, a finding that was affirmed by the Appellate Division.
It is emphasized at this point that both courts found that the evidence showed that the defendant, by proof of numerous previous drug sales and violations, "was predisposed to commit the offense for which he was charged” (p 518).